IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

CHAIN ELECTRIC COMPANY                                                                    PLAINTIFF

VS.                                                           CIVIL ACTION NO.  2:03CV368KS-MTP

NATIONAL FIRE INSURANCE CO.
OF HARTFORD AND ANGELO IAFRATE
CONSTRUCTION, LLC NOW KNOWN AS
JAMES CONSTRUCTION GROUP, LLC                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on a motion to dismiss filed by defendants National Fire Insurance Co. of Hartford ("National) and Angelo Iafrate Construction, LLC n/k/a James Construction Group, LLC ("Iafrate") and on a motion for summary judgment filed by plaintiff Chain Electric Company ("Chain").  From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court finds that both the motion to dismiss and the motion for summary judgment should be denied.  The court specifically finds as follows**:**

FACTUAL BACKGROUND

In early 2001, Iafrate was hired by the Mississippi Transportation Commission (the "Commission") to perform construction work on the Nissan Plant Interchange on Highway 55 north of Jackson, Mississippi (the "Project"), pursuant to a contract dated February 7, 2001 (the "Contract").  Iafrate subsequently subcontracted some of the electrical work on the Project to Chain, pursuant to a subcontract agreement dated March 7, 2001 (the "Subcontract").  The Subcontract contained an arbitration provision which provided that "any and all claims, disputes,

1

and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof," be referred to arbitration. National, who acted as Iafrate's surety on the Project, was not a party to the Subcontract.

At Iafrate's request, and as required by the Contract, National issued a performance and payment bond dated February 7, 2001.[1] The Bond inures to the benefit of "all persons supplying labor or materials under the Contract" and guarantees both the full performance of the Contract as well as prompt payment. The Bond also guarantees"all of the expense and cost and attorney's fees that may be incurred in the enforcement of the performance of said contract, or in the enforcement of the conditions and obligations of this bond." The Bond provides that National's obligations thereunder would be "null and void" if Iafrate performed the obligations stated therein. The sole named obligee on the Bond is the State of Mississippi.

After Chain completed its work on the Project, certain disputes arose between Chain and Iafrate. By letter dated March 14, 2003, Chain's attorney demanded payment from National in the amount of $106,110.88. National refused to pay. Thereafter, on June 10, 2003, Chain filed suit against both Iafrate and National in Circuit Court of Forrest County, Mississippi, seeking damages for Iafrate's alleged breaches of the Subcontract in the amount of $106,110.888 plus prejudgment interest, any applicable statutory penalty, attorneys fees and costs. The case was removed to this court on or about July 1, 2003.

On August 6, 2004, Iafrate's attorney sent a letter to Chain's attorney enclosing a check

---

[1] The Bond is what is known as a "903 Bond" since the form of the Bond, which is required by the Commission for every contractor with whom it has a contract, is found in section 903 of the "Red Book. " The Red Book is the name of the book containing the standard specifications and general conditions to which every highway contract refers.

dated July 28, 2004 in the amount of $113,298.27 (more than the total damages demanded by Chain in its complaint), as payment for the "undisputed contract balance owed to [Chain]."

Pursuant to the arbitration provision in the Subcontract, Chain and Iafrate agreed to arbitrate the dispute between them. The proceedings in this court were stayed as to all parties by order dated April 1, 2004 (in response to an unopposed motion filed by Defendants) pending the outcome of arbitration. Chain then commenced an arbitration with the American Arbitration Association, but Iafrate suggested that it would prefer to proceed in a private arbitration. Chain agreed and withdrew the pending arbitration before the AAA. Chain and Iafrate then proceeded to arbitration before the Honorable Charles Clark, a retired Judge of the Fifth Circuit (the "Arbitration").

National was not a party to the Arbitration. In the Arbitration, Chain increased its demand from Iafrate to a total of more than $430,000, including attorney's fees of $71,108.18.[2] Two days of hearings took place on October 12 and 13, 2005 in Jackson, Mississippi. During the Arbitration, Chain argued that Iafrate was obligated by statute to pay Chain's attorneys fees. Although National was not a party to the Arbitration, Chain also argued that the Bond legally obligated National to pay its attorneys fees.[3]

---

[2] This amount was quantified in Chain's final brief in the Arbitration (motion for reconsideration, dated January 17, 2006) and apparently included all of the attorney fees incurred by Chain since the inception of its dispute with Iafrate.

[3] Chain stated in its motion for reconsideration in the Arbitration: "Because the highway payment bond issued by the surety specifically provides for the imposition of attorney's fees and if those fees aren't imposed in this proceeding Chain intends to pursue the surety to collect them, we ask the Arbitrator to be especially careful when addressing the Attorney's fees issue to recognize that if Chain does not recover its fees here, that the Arbitrator is not addressing nor determining Chain's entitlement to the attorney's fees contemplated by the payment bond." However, in that brief Chain also argued that National was responsible for its attorneys fees

After post-hearing briefing, on January 20, 2006, the Arbitrator issued his Amended Final Award (the "Award"), in which he awarded Chain $111,775.38 (approximately 25% of the amount demanded by Chain). The Arbitrator expressly declined to award Chain its attorneys fees and costs, stating:

> Under the record proof viewed in light of the Rules governing this arbitration, each party prevailed on some of the issues raised, but not on others. Each party should bear its own attorneys fees and costs. In the exercise of the Arbitrator's discretion, no affirmative award of attorneys' fees or costs will be made.

The Award does not address National's liability under the Bond.

On February 7, 2006, Iafrate's attorney sent a letter to Chain's attorney tendering a check for $111,775.38, the full amount of the Award, conditioned upon Chain's agreement that the check would constitute a full and final settlement and release of all of Chain's claims against Iafrate and National. Chain refused to accept that condition and therefore did not negotiate the check. A month later, Chain moved to reopen this case (which was opposed by National and Iafrate) and on March 28, 2006, this court granted Chain's motion. On April 21, 2006, National and Iafrate moved to dismiss the Complaint, and that same day, Chain moved for summary judgment against National,[4] seeking the full amount of the Award ($ 111,775.38), attorneys fees

---

under the terms of the Bond. Chain cited to, and attached copies of, several treatises supporting this claim, and attached a copy of a Section 903 bond, all of which were "sufficient to establish the point that Iafrate's surety is responsible for Chain's attorney's fees notwithstanding anything else." Chain concluded: "More than sufficient justification exists to award those fees here independently of the payment bond obligation. Chain can't recover twice so there is no reason not to award those fees now." Chain also stated: "Chain should not be required to return to the District Court for the relief it is entitled to here."

[4] On May 2, 2006, Chain moved to treat its motion for summary judgment as a response to National's and Iafrate's motion to dismiss, as the two motions involve the same facts and issues. This court hereby grants that motion, and will address both the motion to dismiss and the

4

($80,014) and costs ($10,125).

## STANDARD OF REVIEW

Rule 12(b) of the Federal Rules of Civil Procedure provides: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...". As National and Iafrate have appended to their motion to dismiss matters outside the pleading which this court will consider, their motion will be treated as a motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988). The moving party, however, need not negate the elements of the non-movant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) *(citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the non-movant may not rest on the pleadings, but must identify specific evidence in the ... record demonstrating that there is a

---

motion for summary judgment in this opinion.

material fact issue concerning the essential elements of its case." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257.  "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial." *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1996) (citation omitted).

## THE PARTIES' ARGUMENTS

Chain argues that it is entitled to the full amount of the Award because National's check has not been negotiated.  Chain argues that the Bond allows for the award of attorneys fees and costs, and that National was not a party to the Arbitration, nor was its liability addressed there.  Chain also argues that the attorneys fees and costs it is seeking are reasonable.

National and Iafrate argue that Chain is not entitled to recover attorneys fees and costs from National because of the general principle that a surety's liability is co-extensive with the principal's liability.  They argue that since the Arbitrator found that Iafrate was not liable for attorneys fees and costs, National cannot be liable for them either.  They also argue that even if National's liability could extend beyond Iafrate's, the Bond does not require payment of Chain's attorneys fees and costs because they were not incurred in enforcing the Contract nor in enforcing the terms and conditions of the Bond.  Rather, National and Iafrate argue that the fees and costs were incurred in pursuit of claims against Iafrate under the Subcontract, and that it has not been necessary for Chain to incur any attorneys' fees to pursue National because Iafrate discharged the entire indebtedness owned to Chain.  Indeed, National argues that its obligations under the bond

are null and void because Iafrate tendered performance. National also argues that its contractual obligation to pay attorneys fees extends only to the Bond's named obligee, the State of Mississippi. Finally, National and Iafrate argue that, at any rate, the amount of attorneys fees and costs being sought by Chain are unreasonable because 75% of Chain's claims in the Arbitration were determined to be without merit.

ANALYSIS

The Arbitration Award

In support of its position that it is entitled to summary judgment on its claim against National for the full amount of the Award, Chain states that "[a] judgment against the Principal is conclusive against the Surety unless the judgment was a product of the principals [*sic*] fraud or collusion." However, there are numerous cases from this jurisdiction and others holding that where a surety is not a party to a litigation, judgment against its principal is only evidence of its liability, not conclusive proof. *See*, *e.g.*, *Lipscomb v. Postell*, 38 Miss. 476, 492 (Miss. 1860) (holding that a judgment against a principal is only prima facie evidence against the surety in a suit on the bond and is not conclusive); *Lawson v. Dean*, 144 Miss. 309, 313 (Miss. 1926) (citing *Lipscomb* for the principle that "an account of the administrator...or a judgment or decree against him, is admissible in evidence against the sureties, and makes a *prima-facie* case to be rebutted by them."); *State v. Hull*, 53 Miss. 626, 647 (1876) ("The decree of the Chancery Court on the final account of the guardian is conclusive in this action against the guardian, but is only prima facie as to the surety, who was not a party to that suit."); *see also Frederick v. U.S.*, 386 F.2d 481, 486 n.6 (5th Cir. 1967) (stating that under Louisiana law, "[a] judgment against a principal conclusively establishes against a surety the fact of, and amount of, the principal's liability...if

obtained in a suit of which surety had full knowledge and opportunity to defend...[if not], the judgment is at the most only prima facie evidence..."); *U.S. v. Maryland Cas. Co.*, 204 F.2d 912, 915 (5th Cir. 1953) (holding that under Alabama law, a judgment against a principal is only prima facie evidence of a surety's liability); *Lake County v. Massachusetts Bonding & Ins. Co.*, 75 F.2d 6, 8 (5th Cir. 1935) ("Where it is not made to appear that the surety knew of and had opportunity to defend the suit, then the judgment [against the principal] is prima facie evidence that the surety is liable, sufficient to support a verdict unless it is rebutted by proof on the part of the surety that it was obtained through fraud or collusion, or that the loss or liability created by the judgment arose from acts other than those indemnified against under the conditions of the bond.") (citations omitted).

  Indeed, the case cited by Chain, *First Mobile Home Corp. v. Little*, 298 So. 2d 676 (Miss. 1974), holds no differently. In that case, the Mississippi Supreme Court did hold that a default judgment against a principal was binding upon the surety. However, the court based its decision upon the fact that the surety was a party to that action in which the default judgment was obtained, and therefore it had an opportunity to defend itself. *Id.* at 682-83.

  Thus, based on the foregoing authorities, this court cannot conclude as a matter of law that National is liable for the Award and summary judgment on this claim is denied.

  In support of their motion to dismiss, National and Iafrate argue that Iafrate's tender to Chain of the amount of the Award means that National is not obligated for the Award, citing to the rule that the "refusal to accept a lawful and sufficient tender of payment made by the ... principal discharges the surety." 74 Am. Jur. 2d *Suretyship* § 80 (2005). However, "tender" that is sufficient to discharge a contractual obligation is defined as "an unconditional offer of payment

consisting of the actual production of a sum not less than the amount due on a particular obligation; tender must be without conditions to which the creditor can have a valid objection...". 28 *Williston on Contracts* § 72:27 (4th ed. 2003). And in *Day v. Royce Kershaw*, 187 So. 221, 222-23 (Miss. 1939), the Mississippi Supreme Court held that a contractor's tender to materialmen of the debt owed to them by the subcontractor was invalid because it did not include attorneys' fees being claimed by the materialmen under the contractor's bond, which provided for "all of the expense and cost and attorney's fees that may be incurred in the enforcement of the performance of said contract, or in the enforcement of the conditions and obligations of this bond."

In this case, the tender was not "sufficient" from Chain's perspective because it did not include attorneys fees and it was conditioned upon Chain releasing Iafrate and National from further obligations. Thus, National and Iafrate's motion to dismiss Chain's claim for the Award is denied.

Attorneys' Fees and Costs

National and Iafrate have relied heavily on the principle that a surety's liability is co-extensive with that of its principal in arguing that National's liability to Chain cannot exceed the amount of the Award and that it therefore cannot be liable to Chain for attorneys' fees and costs.[5]

---

[5] In support of this argument, they have cited two Mississippi cases - *Mohundro v. Alcorn Cty.*, 675 So. 2d 848 (Miss. 1996) and *New York Indem. Co. v. Myers*, 138 So. 334 (Miss. 1931) - both of which are inapplicable to the instant case. *Mohundro* dealt with the issue of qualified immunity. The court held that since the principal had qualified immunity and was therefore not liable, the surety could not be liable "since no liability may be imputed to its surety beyond that of its principal." 675 So. 2d at 854. Here, however, Chain is not attempting to impute liability for attorneys fees to National. Rather, Chain is arguing that the contract language of the Bond creates an independent basis for National's liability. And in *Myers*, decedent's creditors sued the executor and his surety for dissipation of the estate's assets. The surety had issued a fidelity

However, this argument ignores the principle that "[a] surety's liability is always measured by the express terms of his covenant, which is contained in the obligations of his principal as defined in the main contract and any applicable statute, and in the conditions of the bond." *Alexander v. Fidelity & Casualty Co.*, 100 So. 2d 347, 349 (Miss. 1958); *see also* 74 Am. Jur. 2d *Suretyship* § 20 (2006) ("when the guarantee constitutes an independent agreement imposing greater collateral responsibility on the surety, the surety's liability is not so limited [to that of the principal's liability.]").[6]

Following this principle, Mississippi courts have enforced sureties' contractual and/or statutory obligations to pay attorneys fees. In *Stowell v. Clark*, 118 So. 370, 371 (Miss. 1928), the contractor, Stowell, entered into a contract with the county highway commissioners and the Mississippi highway department for construction of a highway. The United States Fidelity & Guaranty Company was the surety on Stowell's bond, which, like the Bond in the case *sub*

---

bond guaranteeing the executor's "faithful execution of his duties." In the context of discussing the standard of care governing the executor under the terms of the bond (that of the "ordinarily prudent man") which would govern whether or not the bond was breached, the court stated that "the liability of the surety on the bond of an executor or administrator is coextensive with that of the principal, and does not extend further."

[6] *Cf. Kimberly-Clark Corp. v. Alpha Building Co.*, 591 F.Supp. 198, 204 (N.D. Miss. 1984) ("a claimant on a contract surety bond...is not entitled to recover attorney's fees unless a statute or the contract with the surety so requires."); *Nat'l Surety Co. v. Trustees*, 146 Miss. 277, 284-85 (1927) (reversing award of attorneys fees against surety in breach of contract suit by obligee against principal where neither statute nor bond provided for attorneys fees); *Mississippi Fire Ins. Co. v. Evans*, 153 Miss. 635, 650-51 (1929) (affirming lower court's denial of award of attorneys fees where neither bond nor statute provided for such an award); *Faulkner Concrete Pipe Co. v. U.S.*, 218 So. 2d 1, 3 (Miss.1968) (reaffirming *Nat'l Surety*). This is in keeping with the fact that Mississippi follows the "American rule" on awards of attorneys fees, meaning that "in the absence of contractual provision or statutory authority" attorneys fees may not be awarded. *See, e.g., Stelly v. Barlow Woods, Inc.*, 963 F.Supp. 592, 594 (S.D. Miss. 1993), *aff'd*, 47 F.3d 427 (5th Cir. 1995).

*judice*, guaranteed the payment of "all persons furnishing said principal with material and labor in the course of the performance of said work" and provided for the payment of "all of the expense and costs and attorney's fees that may be incurred in the enforcement of the performance of said contract, or in the enforcement of the conditions and obligations of this bond." *Id.* at 371, 372. A subcontractor on the project sued Stowell and the surety for money allegedly owed to him on the project, as well as for attorneys fees. *Id.* at 371. The Mississippi Supreme Court affirmed the lower court's award of damages and attorneys fees against the contractor and the surety, stating:

> The contract of appellant Stowell with Claiborne county and the highway department, and his surety bond, so far as appellee's rights are concerned, constituted one contract. Each was incorporated into and made part of the other. The surety bond was for the benefit of subcontractors and others supplying labor and materials that went into the road work, as well as for the benefit of the county. The purpose of the bond was to make them whole; and in order to do so, the bond provided that all expenses and costs and attorney's fees incurred by them in the enforcement of their rights should be paid by the obligors in the bond. Section 2 of the statute [Chapter 217, § 2 of the Laws of 1918] expressly gives persons furnishing materials and labor in the construction of public work a right of action on the surety bond. It gives them the right, in order to enforce their claims, to the benefit of the conditions in the bond. And, as shown, the bond provides that they shall have the right to enforce their claims in the courts, and charge the costs and attorney's fees against the surety bond.

*Id.* at 372.[7] *See also Dixie Contractors, Inc. v. Ballard*, 249 So. 2d 653 (Miss. 1971) (awarding

---

[7] This case also disposes of National's argument that under the terms of the Bond, it only owes obligations to the Mississippi Department of Transportation, the named obligee. Indeed, in *Stowell*, both the contractor and the surety argued that the attorneys fees provision in the bond was for the benefit of the county (the obligee) alone, and was not for the benefit of the

attorneys fees to materialman in action against contractor and surety under contractor's bond providing for reasonable attorneys fees); *Mississippi Road Supply Co. v. W. Casualty & Surety*, 246 Miss. 510 (1963) (holding that materialmen supplying to subcontractors under a state highway bond were protected by the applicable statutes and the bond language in the contract with the state, contractor and surety, for the value of services and supplies rendered, and for attorney's fees incurred in the enforcement of their rights). *Cf. Day v. Royce Kershaw, Inc.*, 187 So. 221 (Miss. 1939) (awarding attorneys fees to materialmen suing contractor for amounts owed to them by subcontractor, on bond executed by contractor providing for "all of the expense and cost and attorney's fees that may be incurred in the enforcement of the performance of said contract, or in the enforcement of the conditions and obligations of this bond.").

National also argues that the issue of attorneys fees and costs was already adjudicated in the Arbitration and that the Arbitrator's decision not to award attorneys fees and costs to Chain precludes Chain from pursuing them here.[8] It is true that one of Chain's claims in the Arbitration was that pursuant to the applicable statutes (sections 11-55-5 and 31-5-57 of the Mississippi

---

subcontractor, but the court expressly rejected that argument. 118 So. at 372.

[8] In support of this argument, National cites *Yarbro v. Purser*, 74 So. 425 (Miss. 1917) for the proposition that "an agreement to submit the controversy to arbitration has the legal effect to 'make a compromise settlement of the matters in dispute, including the matters in this suit; and the effect of this agreement was to merge the original causes of action and defenses into the written award and make that the exclusive source of the rights and liabilities of the parties." In *Yarbro*, however, there were only two parties in the litigation, both of whom had agreed to resolve certain aspects of the litigation through binding and conclusive arbitration, and after the arbitration decision, one of the parties brought suit on one of the arbitrated claims. *Id.* at 426-27. This is simply not the case here.

Code Annotated[9]), attorneys fees and costs should be awarded in the amount of $71,108.18 (the total amount incurred thus far by Chain in pursuing its claims against Iafrate). The Arbitrator rejected this claim, deciding in his discretion not to award attorneys fees because Chain had prevailed on some issues and Iafrate had prevailed on others. Only Iafrate's liability for attorneys fees was addressed in the Arbitration. Although Chain discussed the Bond in its briefing in the Arbitration and argued that National was liable for attorneys fees under the Bond, Chain also took great care to point out that the issue of National's liability was not before the Arbitrator. In the Award, the Arbitrator did not address whether the Bond provided for the payment of attorneys fees by National. Indeed, National was not a party to the Arbitration, and its liability was not addressed in the Arbitration.[10] The court finds that the Arbitration and the Award do not

---

[9] Section 11-55-5(1) provides: "Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure."

Section 31-5-57 provides in pertinent part: "Whenever any person supplying labor or material in the prosecution of the work brings an action on such payment bond and the trial judge finds that the defense raised to such action by the contractor or surety was not reasonable, or not in good faith, or merely for the purpose of delaying payment, then the trial judge may, in his discretion, award the claimant a reasonable amount to be determined by the trial judge as claimant's attorney's fees in bringing such successful action."  That section further provides that it "shall not affect the right of any person to recover attorney's fees where provided by contract or bond."

[10] Iafrate and National also argue that because the Subcontract required that "any and all claims, disputes, and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof" be referred to arbitration, and because Chain's claim for attorneys fees arises out of or relates to the Subcontract, the claim is arbitrable (and, in fact, has already been arbitrated). However, National was not a party to the Subcontract and Chain's claim for attorneys

13

preclude Chain from pursuing attorneys fees and costs against National in this action.

In order to determine whether National can be liable for Chain's attorneys' fees it is necessary to examine the language of the Bond and the nature of Chain's claims. The Bond guarantees to pay "all of the expense and cost and attorney's fees that may be incurred in the enforcement of the performance of said contract, or in the enforcement of the conditions and obligations of this bond." Iafrate and National argue that National has no liability for attorneys fees and costs (of, for that matter, for the Award itself) because Iafrate has already tendered payment of the Award to Chain (which Chain has refused). This argument is untenable. The payment tendered to Chain was expressly conditioned on Chain's release of any further claims against Iafrate and National, which Chain refused to do. Such a tender is insufficient and does not relieve National of its obligations under the Bond.

The Mississippi Supreme Court's decision in *Day v. Royce Kershaw*, *Inc.*, 187 So. 221 (Miss. 1939) is instructive in this regard. *Day* involved a claim by materialmen against a contractor for debts due the materialmen from the subcontractor. The bond executed by the contractor contained a provision for "all of the expense and cost and attorney's fees that may be incurred in the enforcement of the performance of said contract, or in the enforcement of the conditions and obligations of this bond." *Id.* at 222. A similar prior action had been instituted by the materialmen, but was dismissed on the ground that it was premature (the principal obligee on the bond, the State Highway Department, had not yet published a notice of the completion of the contract, as required by statute). *Id.* at 222-23. After the prior action was dismissed, attorneys for the materialmen induced the State Highway Department to publish the required notice, and

---

fees from National arises out of the Bond, not out of the Subcontract.

the contractor then tendered to the materialmen the amount alleged to be due them. *Id.* However, this tender was refused by the materialmen because it did not include any amount for attorneys' fees, and a second action was commenced. *Id.* The contractor admitted the debt, but pleaded its tender of payment as a defense to the claim for attorneys' fees. *Id.* The Mississippi Supreme Court held that although the materialmen were not entitled to recover attorneys' fees incurred in the prior, premature action, under the bond they were entitled to attorneys' fees for legal services rendered in connection with securing the publication of notice and for prosecuting the second suit. *Id.* at 223. The court concluded that the tender had been "ineffective" because it did not include attorneys' fees, and that the contractor was not entitled to assert such insufficient tender as relieving it of the obligation to pay attorneys' fees. *Id.*

   Finally, Iafrate and National argue that Chain's attorneys fees were not incurred in the enforcement of the Contract or the conditions and obligations of the Bond but, rather, were incurred in pursuing claims against Iafrate (not National) arising under the Subcontract. Chain disagrees. Iafrate and National also argue that the attorneys fees and costs Chain is seeking are unreasonable because 75% of its claims in the Arbitration were deemed to be without merit. Chain disagrees, and has submitted an affidavit from its attorney describing the work he has done, along with detailed time records, in support of its claim for attorneys fees and costs.

   The court finds that there are genuine issues of material fact relating to whether, and to what extent, Chain's attorneys fees and costs were incurred in enforcing the Contract or in enforcing the conditions and obligations of the Bond, as well as to the reasonableness and necessity of the fees and costs. Therefore, although the court finds that Chain may pursue its action for attorneys fees and costs against National, these genuine issues of material fact preclude

a granting of summary judgment to Chain.

IT IS, THEREFORE, ORDERED AND ADJUDGED that defendants' motion to dismiss [**# 28**] is DENIED and plaintiff's motion for summary judgment [**# 30**] is denied.

SO ORDERED and ADJUDGED on this, the 16th day of October, 2006.

s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE